[Nos. 10744-9-II; 13504-3-II. Division Two. May 14, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. CHESTER R. PUTMAN, JR., *Appellant.*

*In the Matter of the Personal Restraint of* CHESTER R. PUTMAN, JR., *Petitioner.*

*Bertha B. Fitzer,* for appellant (appointed counsel for appeal).

*Patrick D. Sutherland, Prosecuting Attorney,* and *Gary R. Tabor, Chief Criminal Deputy,* for respondent.

PETRICH, C.J. — After reconsidering our opinion filed on the 28th day of May, 1991, we have modified it to read as follows. In this appeal, which has been consolidated with his personal restraint petition, Chester R. Putman, Jr., challenges his judgment and sentence imposed following jury verdicts of second degree burglary, RCW 9A.52.030 (Laws of 1975, 2d Ex. Sess., ch. 38, § 7), one count of felony murder in the first degree, RCW 9A.32.030(1)(c) (Laws of 1975, 2d Ex. Sess., ch. 38, § 3), and one count of premeditated murder in the first degree with aggravating circumstances, RCW 9A.32.030(1)(a)

(Laws of 1975, 2d Ex. Sess., ch. 38, § 3). He was sentenced to life without parole for the premeditated murder count.

His primary contention is that he is effectively denied his right of appeal by the absence of a verbatim report of one of two of the suppression hearing proceedings, in which the murder weapon was ruled admissible, and of the closing arguments. He claims he was unable to correct or question the trial court's narrative report, which was created essentially from the prosecutor's notes. He also contends that he was denied effective assistance of counsel; that evidentiary errors prejudiced his case; and that the procedural aspects of the law, whereby the sentence of life without parole is imposed, violate due process by needlessly chilling a defendant's constitutional rights to plead not guilty and demand a jury trial.

We affirm.

In 1982, a jury convicted Chester R. Putman, Jr. (Terry) of murdering Henry and Laverne Rumberger and burglarizing their computer store.[1] The evidence reveals that Terry beat the Rumbergers to death; he also strangled Laverne Rumberger. He apparently beat them with a pry bar, part of which was found at the scene.

David Putman, Terry's brother, was an employee of the Rumbergers' computer store at the time. After the murders, a friend of David's informed the police that David and Terry had planned to burglarize the computer store. Terry was arrested on August 25, 1981. On that date, the police executed a search warrant and found missing computer equipment stored in Terry's attic. Under authority of the later search warrant they found a pry bar on Terry's father's property, in the pit of an outdoor privy, which matched the part of the pry bar found at the scene.

David, who was in Reno at the time of the murders, was charged and later convicted of two counts of second degree felony murder.

---

[1] The excessive delay in this appeal is the result of the failure to forward the notice of appeal to the Court of Appeals and the trial counsel's lack of diligence in pursuing the appeal. We have accepted review pursuant to RAP 5.4.

### LACK OF VERBATIM REPORT OF PROCEEDINGS

Putman argues that the narrative report of proceedings is insufficient to support review of his argument that the evidence of the murder weapon, the pry bar, should have been suppressed because there was no source, independent of Terry's illegally obtained confession, to support the issuance of the search warrant.

Due process of law requires that we have a "record of sufficient completeness" for review of the errors raised by a criminal defendant. *Draper v. Washington*, 372 U.S. 487, 498-99, 9 L. Ed. 2d 899, 83 S. Ct. 774 (1963); *State v. Larson*, 62 Wn.2d 64, 67, 381 P.2d 120 (1963). In *Larson*, the appellate counsel, not having represented the defendant at trial, was unable to obtain adequate appellate review because he could not determine whether the narrative statement of facts was sufficiently complete nor could he determine what errors to assign.

■ Putman's case is distinguishable from *Larson*, which dealt with a lack of a record of proceedings before a jury. Here, we are not concerned with the record of jury proceedings but only with matters submitted to the court to determine admissibility of evidence. We have before us the narrative report of proceedings prepared by the State from its contemporary notes of the hearing, the trial court's written findings of fact and conclusions of law, and the verbatim report of the trial court's detailed oral ruling on the motion. This is a record of sufficient completeness to allow our review. *See Larson*, 62 Wn.2d at 67.

■ Putman also argues that the record is inadequate because the lack of verbatim and narrative report of proceedings of the closing arguments prevents him from determining and demonstrating prejudice from prosecutorial misconduct and ineffective assistance of counsel. Regarding the prosecutorial misconduct argument, if he had the verbatim record, Putman would have to show that the prosecutor's comments were improper and that a substantial likelihood existed that the comments affected the jury. *State v. Neslund*, 50 Wn. App. 531, 561-62, 749 P.2d 725, *review denied*, 110 Wn.2d 1025

(1988). It would have been very difficult for Putman to show this because the jury was instructed that it should disregard any remark or argument made by either counsel that was not supported by the evidence or the law. Further, it seems likely that no prejudicial prosecutorial conduct occurred because Putman's trial counsel probably would have remembered it. We note that Putman's counsel on appeal has not attempted to supplement the record with an affidavit by the trial judge stating whether an objection regarding prosecutorial misconduct was made during the closing arguments. *See State v. Keller*, 65 Wn.2d 907, 400 P.2d 370 (1965).

As for ineffective assistance of counsel, Putman would have to show that his counsel's conduct was deficient and that it changed the outcome of the trial. *State v. Sardinia*, 42 Wn. App. 533, 539, 713 P.2d 122, *review denied*, 105 Wn.2d 1013 (1986). The record from the rest of the trial demonstrates that the assistance of Putman's counsel was more than adequate; this, in addition to the mitigating instruction, convinces us that there was no ineffective assistance of counsel.

Consequently, we find that we have "a record of sufficient completeness" even though we lack the verbatim or narrative report of the closing arguments because we have a sufficient report of the substantive portion of trial proceedings, because there is no claim by trial counsel or the defendant that a specific remark or conduct by the prosecutor amounts to misconduct, and because a mitigating instruction was given.

APPLICATION OF THE EXCLUSIONARY RULE

Furthermore, we are satisfied that Putman could not have successfully challenged the admissibility of the murder weapon even if, contrary to the trial court's ruling, no independent source supporting the search warrant existed. Putman could not challenge the search or seizure under the Fourth Amendment because he did not have a legitimate expectation of privacy in the area searched or the property seized. *See Rawlings v. Kentucky*, 448 U.S. 98, 65 L. Ed. 2d

633, 100 S. Ct. 2556 (1980); *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980). Putman had no Fourth Amendment privacy rights in the area searched because it was owned by his father or in the item seized because Putman had abandoned it.

■ Putman, however, argues that the exclusionary rule applies here under the Fifth Amendment. The exclusionary rule is normally applied to suppress secondary evidence obtained from a violation of the Fourth Amendment: "Evidence is inadmissible as 'fruit of the poisonous tree' where it has been gathered by exploitation of the original illegality." *State v. Aydelotte,* 35 Wn. App. 125, 131, 665 P.2d 443 (1983). *See also Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). However, the Washington Supreme Court has recently decided under federal constitutional law that the exclusionary rule may also apply under the Fifth Amendment. *State v. Wethered,* 110 Wn.2d 466, 475, 755 P.2d 797 (1988). Even so, evidence derived from a confession given without *Miranda*[2] warnings need not be suppressed absent a direct Fifth Amendment violation or actual coercion. *Wethered,* 110 Wn.2d at 475.

> [T]he *Miranda* presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted. Despite the fact that patently *voluntary* statements taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination.

*Oregon v. Elstad,* 470 U.S. 298, 307, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985).

■ Here, Putman argues that the police made promises of benefit to obtain his confession on October 21, 1981, thereby making his confession involuntary and all evidence derived from the confession inadmissible. This argument overlooks how the parties characterized Putman's statement. In its findings on the suppression hearing the trial court recorded

---

[2]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

that the parties agreed that Putman's statement "was inadmissible if the defendant Terry Putman did not testify". Implicit in this understanding is that if he testified the statement would be admissible, thus acknowledging the voluntariness of the statement and absence of a Fifth Amendment violation or actual coercion.

■ Further, the record reveals that the police promised Terry that they would talk to the prosecutor for him, not that they would obtain reduced charges in exchange for his confession. We find that under these circumstances, the promise by the police did not amount to an implied promise. *See State v. Gonzales*, 46 Wn. App. 388, 401, 731 P.2d 1101 (1986) (promise by police to talk to prosecutor prior to confession was not an implied promise that rendered confession involuntary; however, the added fact that defendant was confronted with illegally seized evidence rendered confession inadmissible because it was obtained by exploiting prior illegality); *State v. Riley*, 19 Wn. App. 289, 297, 298, 576 P.2d 1311 (1978) ("promise of leniency standing alone, does not, however, automatically invalidate a confession"). Therefore, the exclusionary rule does not apply to suppress evidence of the murder weapon because there was no direct Fifth Amendment violation or actual coercion.

Judgment and sentence affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MORGAN, J., and WORSWICK, J. Pro Tem., concur.

Review by Supreme Court pending June 1, 1993.